## Edward Macauley v. John Kamp.

1. TRESPASS TO REAL ESTATE—*Possession Not Sufficient to Maintain the Action.*—A possession of land claimed to be adverse, but shown by the evidence not to be continuous, the lands being vacant and unoccupied for any purpose, is not sufficient to support an action of trespass.

Trespass, to real estate. Appeal from the Circuit Court of Calhoun County; the Hon. GEORGE W. HERDMAN, Judge, presiding. Heard in this court at the November term, 1894. Affirmed. Opinion filed July 5, 1895.

T. J. SELBY, attorney for appellant.

FRANK A. WHITESIDE, attorney for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This is the companion case mentioned in the opinion herewith filed in Macauley v. Cunningham. Appellant brought this action before a justice of the peace for alleged injury to his real property. The place in controversy here is the strip along the south side of his land, between the line of Buchanan's survey, as he claims, and that of Pulliam; and the two cases are closely alike in their general features.

James Cunningham owned the southwest quarter of the section from 1846 until his death, when it passed by descent to his sons, George and John, who so divided it as to give to George the north sixty acres. Upon his death it was sold by his administratrix to John, who sold it to his mother, Mrs. Ann Cunningham, in 1883, and she conveyed to appellee in 1891. This tract, like that of appellant's adjoining it on the north, was heavily timbered. The dispute about the boundary line between them arises upon the same surveys as in the other case and there is a like conflict of the evidence as to actual possession.

It appears that about fourteen years ago one Ansel Putney, then holding under a lease from Cunningham, having cleared and put in cultivation a portion of the sixty acre tract, erected a fence along the north side, beginning some six rods west of its east line and extending west about one hundred rods; and that George Cunningham had shown him a line understood to have been made by one of the surveys since that of Buchanan, and told him "he didn't know it was correct, but didn't want him to go beyond it." Appellant claims that this was the true line of division and corre-

sponded with that of Buchanan; that Putney put his fence on it, where it remained until about the first of April, 1894, and that appellee then moved it—different parts to different distances, from six to twenty feet north, and did the injury here complained of.

Putney testified that he did not intend it for a division fence nor to conform to the line indicated to him by Cunningham. Parts were on it, and others south of it. He says " It was not straight—you couldn't call it straight, but it was put there so it suited my clearing." Pulliam noticed it when he surveyed the line in 1892, and says that at its nearest point to that line it was 20 and at its farthest 126½ links south, and " did not run east and west across there." Appellant took no part in or toward the building of this fence, and manifestly it was not a division fence. He says he has had a part of his land on that line under fence, and cultivated a part of it to the Putney fence. But he removed his that connected with Putney's five or six years ago, since which the strip in controversy has been vacant and unoccupied.

Appellee succeeded Putney as tenant, occupying for seven or eight years before he bought the land of Mrs. Cunningham. He knew nothing of the previous surveys or where the division line was supposed to be, until that of Pulliam was made for him and and J. W. Cunningham the year after his purchase. He testified that some years back, while he was tenant, he asked appellant if he knew where the line was, and he answered that he did not, but " would clear up to the fence, because it didn't make much difference, as he and the old lady were satisfied, and he would give up the ground if it was not right." He did remove his fences and ceased to use the ground long before the acts for which this suit was brought were committed. It was then, and so had been, vacant, uninclosed and unoccupied for any purpose, so far as appears, and it had never been otherwise until after Putney built his fence, probably in 1880. Thus the proof fails to show any such actual and adverse posssession as would support this action, and we think the jury were warranted

in finding that no part of the place in controversy was in the northwest quarter of the section; so that he could have had no constructive possession.

It was also made a question whether appellee did in fact remove the fence or cut a tree or do any other injury to any land north of it. He testified that he only cleared out the fence row, took out some old rails, put new ones in and reset the fence as nearly on the same line as was possible, as to which he was corroborated by two witnesses.

None of the instructions on either side are shown in the abstract. The case was argued here on the evidence, without serious complaint of any of the rulings. Perceiving no sufficient reason for reversal, the judgment will be affirmed.